130 N.J. Super. 596 (1974)
328 A.2d 41
STATE OF NEW JERSEY, PLAINTIFF,
v.
LUCIUS JONES, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided October 22, 1974.
*597 Mr. John W. McFeeley, III, Assistant Prosecutor for the State (Mr. Thomas Shusted, Prosecutor Camden County).
*598 Mr. Murray N. Sufrin for defendant.
KING, J.C.C., Temporarily Assigned.
Defendant is on trial on charges of murder, arson and kidnapping. On the sixth day of trial, while being transported from the courtroom on the second floor to the county jail on the sixth floor by two unarmed court attendants, the handcuffed defendant was exposed to three or more jurors for 15 or 20 seconds while an elevator carrying the jurors opened unexpectedly. No leg shackles were used. Defendant has been neatly groomed, properly deported, and well dressed throughout the trial, as were the other two codefendants. No physical or verbal characterization of defendant as dangerous or obstructive has arisen during the trial. All reasonable precautions to prevent such an incident had been followed. The episode was entirely accidental, and apparently resulted when a mechanical defect disabled the security elevator in which the defendant was usually transported, which was not used by the jury or public.
The issue here is whether the fact that some jurors may have seen defendant in handcuffs for a few seconds was so inherently prejudicial as to deny him his constitutional right to a fair trial and require the court to grant his motion for a mistrial. The exact question has not been decided in this state. A somewhat comparable situation arose in State v. Sykes, 93 N.J. Super. 90 (App. Div. 1966), where defendant was seen by jurors in handcuffs as he approached the courtroom just prior to summations. The judge asked defendant if he desired to move for a mistrial. After consulting with his attorney, defendant instead was permitted to retake the stand and testify with respect to his present incarceration. It was also agreed that suitable cautionary instructions would be given to the jury. On post-conviction relief the Appellate Division found no fault with this procedure. The question presented on appeal was whether the trial court should have directed a mistrial on its own motion. Answering that question in the negative, the Appellate Division left *599 open the precise consideration presented here: "Whether or not the court would have granted a mistrial had one been requested, we cannot know." 93 N.J. Super. at 94.
A motion for mistrial is addressed to the sound discretion of the trial court, but the power to grant such motion should be exercised with great caution. Wright v. Bernstein, 23 N.J. 284 (1957). The exercise of judicial discretion in ruling on the motion involves an appraisal by the trial court of the probable effect of the objectionable incident on a fair trial. Runnacles v. Doddrell, 59 N.J. Super. 363 (App. Div. 1960). Such an appraisal "depend[s] very largely on the `feel' of the case which the trial judge has at the time," Greenberg v. Stanley, 30 N.J. 485, 502 (1959), and the trial court's determination will not be altered on appeal unless it is strikingly clear that the parties could not have had a fair trial under the circumstances. Id.
It is well established that under ordinary circumstances a defendant's freedom from handcuffs, shackles or manacles is an important component of a fair and impartial trial. State v. Roberts, 86 N.J. Super. 159 (App. Div. 1965); Way v. United States, 285 F.2d 253 (10 Cir.1960); United States v. Roustio, 455 F.2d 366 (7 Cir.1972). This procedure has been historically followed in order to avoid a prejudice in the minds of the jury against the accused as being a dangerous man, as well as to allow the accused the free and calm use of his facilities. State v. Roberts, supra; Kennedy v. Cardwell, 487 F.2d 101 (6 Cir.1973); 21 Am. Jur.2d, Criminal Law, § 240 at 276.
Defendant's right to be free of shackles during trial need not be extended to the right to be free of shackles while being taken back and forth between the courthouse and the jail. Commonwealth v. Carter, 219 Pa. Super. 280, 281 A.2d 75 (Super. Ct. 1971); Moffett v. State, 291 Ala. 382, 281 So.2d 630 (Sup. Ct. 1973); People v. Panko, 34 Mich. App. 297, 191 N.W.2d 75 (App. Ct. 1971). It is within the sound discretion of an officer charged with the custody of a person to place handcuffs or shackles on him to *600 prevent escape and to protect public safety while the prisoner is being transported. State v. Moore, 257 S.C. 147, 184 S.E. 2d 546 (Sup. Ct. 1971). In State v. Warriner, 506 S.W.2d 103 (Mo. Ct. App. 1974), defendant was removed from the courtroom at the end of the first day of trial in handcuffs and was viewed by the jury outside the courtroom for two or three minutes. Quoting from United States v. Leach, 429 F.2d 956, 962 (8 Cir.1970), the court held (at 104), "It is a normal and regular as well as a highly desirable and necessary practice to handcuff prisoners when they are being taken from one place to another, and the jury is aware of this." Defendant's motion for mistrial was denied.
Further guidance in this area is found in the A.B.A. Project on Standards for Criminal Justice, Standards Relating to Trial by Jury (tentative draft, 1968) (hereinafter cited as Standards):

4.1 Custody and restraint of defendants and witnesses.
(a) During trial the defendant should be seated where he can effectively consult with his counsel and can see and hear the proceedings.
(b) An incarcerated defendant or witness should not be required to appear in court in the distinctive attire of a prisoner or convict.
(c) Defendants and witnesses should not be subjected to physical restraint while in court unless the trial judge has found such restraint reasonably necessary to maintain order. If the trial judge orders such restraint, he should enter into the record of the case the reasons therefor. Whenever physical restraint of a defendant or witness occurs in the presence of jurors trying the case, the judge should instruct those jurors that such restraint is not to be considered in assessing the proof and determining guilt.
The accompanying commentary (at 94) recognizes that added physical restraints may be employed while transporting defendants to and from the courtroom. However, with respect to a situation in which a defendant is momentarily viewed by jury members while handcuffed, the commentary, citing Montoya v. People, 141 Colo. 9, 345 P.2d 1062 (Sup. Ct. 1959), and French v. State, 377 P.2d 501 (Okla. Cr. App. 1963), cautions that "courts in recent years have characterized such incidents as being most prejudicial." (At 95).
*601 The decisions cited may be distinguished from the instant case. In the French case the court was faced with a more egregious situation. On two separate occasions defendant was brought into the courtroom in the presence of members of the jury accompanied by three armed guards while his hands were cuffed and his arms bound to a six-inch leather belt around his body. In the courtroom two of the guards removed the physical restraints while the other guard stood watch. The appellate court, reversing defendant's conviction, found this procedure to be violative of a state statute which prohibited the use of chains or shackles before a jury unless shown to be necessary. No comparable statutory authority exists in New Jersey. Reversible error was also found in Montoya v. People, supra, where the trial court had denied defendant's motion for mistrial. Defendant had been brought in to open court before the jury panel manacled. The sheriff who thus brought defendant into open court testified that he could have brought him to court without handcuffing him. In reversing defendant's conviction the Colorado Supreme Court also relied on the ground that the systematic and improper exclusion of persons of Spanish-sounding names from service on the petit jury had been established by the defense. The decision was expressly limited to the particular facts before the court: "We do not mean to be understood as holding that a defendant can never be brought into court handcuffed, but in this case it was unnecessary and prejudicial to defendant to thus exhibit him before the jury panel." [141 Colo. at 12, 345 P.2d at 1064].
More akin to the instant situation is State v. Sawyer, 60 Wash.2d 83, 371 P.2d 932 (Sup. Ct. 1962), which is also cited in the commentary on A.B.A. Standards, at 97. Defendant claimed that he was denied a fair trial because some members of the jury observed him being handcuffed by a deputy sheriff following adjournment the first day of trial. The Supreme Court of Washington stated: "The affair, at most [was] a misadventure. No constitutional right was prejudiced even if we assume the facts to be as claimed." 60 *602 Wash.2d at 85, 371 P.2d at 933. Most courts now agree with the Sawyer decision that a defendant is not denied a fair trial and is not entitled to a mistrial solely because he was momentarily and inadvertently seen in handcuffs by jury members. Commonwealth v. Ferguson, ___ Mass. ___, 309 N.E.2d 182 (Sup. Jud. Ct. 1974) (handcuffed defendant appeared in courtroom in view of jury); Brand v. Wofford, 230 Ga. 750, 199 S.E. 2d 231 (Sup. Ct. 1973) (handcuffed defendant led through courthouse corridor in view of prospective jurors); United States v. Rickus, 351 F. Supp. 1386 (E.D. Pa. 1972) (handcuffed defendant seen by jury members; no proposed charge submitted by defendant); People v. Dismuke, 3 Ill. App.2d 553, 278 N.E.2d 152 (App. Ct. 1972) (possibility that defendant was seen in barred detention cell by jurors as they passed into courtroom); State v. Crockett, 262 La. 197, 263 So.2d 6 (Sup. Ct. 1972) (handcuffed defendant escorted out of courtroom in jury's full view); United States v. Wilkerson, 453 F.2d 657 (8 Cir.1971) (defendant, dressed in jail clothes, wearing handcuffs and leg-irons and accompanied by armed guards was possibly exposed to jury panel); Jessup v. State, Ind. App., 269 N.E.2d 374 (App. Ct. 1971) (defendant and two of his witnesses, all convicted felons, were brought into courtroom before the jury under heavy guard in handcuffs and restraining chains).
The atmosphere throughout the trial was in every way calm and dignified. No pernicious or inflammatory flavor has attached to the procedure. In the context of the entire proceeding the court does not believe this fleeting episode possesses the potential of distracting the jury from its function of rendering a verdict on the facts and the law. The court does not believe that defendant's brief exposure to his jury while in handcuffs was sufficiently prejudicial to impair his fundamental right to a fair trial. Defendant's motion for mistrial is denied. The court has offered to give the jury a corrective charge but defendant's counsel refused the offer.