95 P.3d 555

STATE of Arizona, Appellee,

v.

Ronald Ray WALKER, Appellant.

No. 1 CA–CR 02–0982.

Court of Appeals of Arizona,
Division 1, Department B.

Aug. 12, 2004.

Terry Goddard, Arizona Attorney General by Randall M. Howe, Chief Counsel and John L. Saccoman, Assistant Attorney General Criminal Appeals Section, Phoenix, Attorneys for Appellee.

James J. Haas, Maricopa County Public Defender by Peg Green, Deputy Public Defender, Phoenix, Attorneys for Appellant.

## OPINION

LANKFORD, Judge.

¶ 1 Defendant Ronald Walker appeals his convictions for possession or use of dangerous drugs and possession of drug paraphernalia. The issue presented on appeal is whether the superior court abused its discretion by finding that Defendant voluntarily absented himself from part of his trial and thereby waived his right to be present.

¶ 2 This case is unlike many reported cases of voluntary absences from trial proceedings. Defendant Walker did not abscond. He was absent from part, not all, of the trial proceedings. The portion he missed was the beginning of the trial, and not its conclusion as is more common. He was available *after* his absence to explain to the superior court the reasons for his absence.

¶ 3 More typical of such cases, however, the record shows that Defendant was warned that he could be tried in absentia. The record also supports the inference that Defendant understood that trial could be reset on short notice.[1] It is equally clear that he was to remain in contact with his counsel regarding the trial setting, that he promised to do so, and that not only did he fail to do so, he made himself unavailable for contact from his counsel or the court.

¶ 4 The details of the proceedings are important to understand the nature of Defendant's absence. At a status conference on June 27, 2002, the superior court set the trial for August 27. The court warned Defendant in writing:

A defendant's failure to appear may result in a bench warrant being issued for his or her arrest ... and trial being conducted in the defendant's absence.

Defense counsel then requested a five-day continuance because counsel had been unable to meet with Defendant. The trial was briefly continued and reset for September 3. In the interim, at a trial management conference on August 30, the superior court confirmed the September 3 trial date. Defendant attended the trial management conference, and acknowledged that he was to appear for trial on September 3.

¶ 5 The trial apparently could not commence on September 3 due to a jury problem. The record is also unclear as to whether Defendant appeared for trial on September 3. To facilitate a speedy trial for Defendant, his case was placed in case transfer, reassigned to a new judge, and reset for trial on September 4 at 9 a.m. Defendant's attorney learned of the new trial setting at about 2 p.m. on September 3. She was in contact with Defendant shortly before she learned of the new trial date.

¶ 6 Defense counsel then tried to contact Defendant but was unsuccessful. Both counsel and the court had instructed him to stay in contact regarding the trial date, but he had not done so.[2] Defense counsel later attempted to contact Defendant via the cellular phone of Defendant's roommate, but was unsuccessful.[3]

¶ 7 A defense investigator went to Defendant's home at noon, but Defendant was not present. The investigator left his card and

---

1.  Although the dissent states that "[t]here is simply no such evidence in the record," *infra* ¶ 45, we see no reason why the trial judge may not decide the fact inferentially, as with any other issue of fact. Among the evidence supporting the inference is that Defendant was told his case was in the case transfer process, that Defendant had an "on call" arrangement with his roommate, and that Defendant apparently had told his roommate that he would be at home awaiting a call about the trial schedule.

2.  The dissent notes that defense counsel told the court on September 4 that on September 3 she had instructed Defendant to remain in contact and on September 5 said that she could not recollect precisely what she had told Defendant, but that requiring him to maintain contact was

"the common practice." Although these statements are not contradictions, the superior court was entitled to resolve any question this raised.

3.  This effort was made from 7:15 a.m. until the superior court convened at 9:42 a.m. on September 4. Then, because Defendant had not appeared, the court continued the proceedings until the afternoon of September 4. Apparently, Defendant did not have a telephone in his home, and the cellular phone was the arranged method for counsel to contact Defendant. Nevertheless, Defendant did not inform his roommate that he would not be at home and on the contrary knew he was to be "on call": Defendant's roommate reported that Defendant was at home waiting to be contacted by his attorney about the trial date.

his phone number for Defendant to call regarding the trial date. Defendant did not telephone. Defendant later admitted that, instead of remaining at home where he would be available to be contacted, he had departed for the library.

¶ 8 The superior court continued the proceedings until 1:30 p.m., but denied counsel's request to issue a bench warrant and have Defendant's case reset for trial at another time. When Defendant had not appeared by 1:30 p.m., the trial began without him. The court gave the following jury instruction before the trial began:

> The defendant has the right not to be present at trial. The defendant has exercised that right. You must not conclude that the defendant is likely to be guilty because the defendant is not present at trial.

Both jury selection and the State's case proceeded in Defendant's absence.

¶ 9 Finally, at about 4 p.m., Defendant telephoned his attorney. His counsel informed him that his trial had begun in his absence. Defendant claimed to have not found the investigator's card until just before he had telephoned. The court adjourned early to allow Defendant to appear and testify the following day.

¶ 10 Defendant attended the beginning of the second day of trial on September 5. Counsel moved for a mistrial based on the asserted violation of Defendant's right to be present at his trial. Defendant did not request an evidentiary hearing. The court offered to permit Defendant and his companion to testify on the circumstances of his absence. They did testify at trial, but their testimony did not include this subject.

¶ 11 Defense counsel informed the court of Defendant's proffered excuses for his absence. Counsel related that Defendant had claimed he lacked money to use a pay telephone. Counsel also stated that he had not been at home waiting for counsel to contact him because he went to the library to research his case. The court denied Defendant's motion for a mistrial, finding that he had voluntarily absented himself from trial.

¶ 12 The record thus indicates that Defendant made no efforts to contact his attorney or otherwise ascertain his trial date between the continuance from the scheduled September 3 start and 4 p.m. on September 4. Indeed, Defendant not only initiated no contacts, he made himself unavailable to repeated attempts by the court or counsel to notify him of a new trial setting. Defendant had actual notice of previous trial settings, had forced a continuance because he and his attorney had been unable to meet, knew his case was in case transfer and would be reset shortly, understood that he was required to maintain contact to update the situation, and knew that he could be tried in absentia if he failed to appear.

¶ 13 Defendant ultimately testified in his own defense on September 5 and was present during the defense case in chief and the remainder of the trial. The jury found Defendant guilty of all charges. He timely appealed and this Court has jurisdiction pursuant to the Arizona Constitution Article 6, Section 9 and Arizona Revised Statutes ("A.R.S.") sections 12–120.21(A)(1) (2003), 13–4031 (2001) and 13–4033(A)(2001).

¶ 14 The issue here is not whether a defendant has a constitutional right to be present at critical stages of his trial, such as the jury selection and presentation of the State's evidence involved here: That right is beyond doubt. *See State v. Levato*, 186 Ariz. 441, 443, 924 P.2d 445, 447 (1996); *see also* Ariz. R.Crim. P. 19.2 (defendant's right to be present at every stage of trial).

¶ 15 The question presented is instead whether this Defendant's right to be present was on the one hand violated, or on the other was waived by his voluntary absence from the proceedings. A defendant may waive his right to be present at any proceeding by voluntarily absenting himself from it. Ariz. R. Crim P. 9.1; *see Taylor v. United States*, 414 U.S. 17, 20, 94 S.Ct. 194, 38 L.Ed.2d 174 (1973) (defendant waived right by failure to return to court after attending part of first day of trial). Whether Defendant's absence was voluntary is a question of fact that we review deferentially. *State v. Bishop*, 139 Ariz. 567, 569, 679 P.2d 1054, 1056 (1984) (abuse of discretion stan-

dard); *State v. Holm,* 195 Ariz. 42, 43, ¶ 2, 985 P.2d 527, 528 (App.1998), *disapproved in part on other grounds, State v. Estrada,* 201 Ariz. 247, 34 P.3d 356 (2001) (citing and following *Bishop* ).

¶ 16 A defendant's absence may be found voluntary in two distinct ways. First, "[t]he court may infer that an absence is voluntary if the defendant had personal notice of the time of the proceeding, the right to be present at it and a warning that the proceeding would go forward in his or her absence...." Ariz. R.Crim. P. 9.1. This inference does not apply to Defendant Walker: He lacked personal notice of the precise time that the trial began.

¶ 17 Voluntary absence may also be inferred, however, from other conduct by a defendant.[4] *See State ex rel. Romley v. Superior Court (Ochoa),* 183 Ariz. 139, 143, 901 P.2d 1169, 1173 (App.1995) (absence of any of factors listed in Rule 9.1 does not prevent inference of voluntary absence); *Cook,* 115 Ariz. at 149, 564 P.2d at 100 (Rule 9.1 inference is only one set of facts that supports inference of voluntariness). A defendant who absconds, for example, voluntarily absents himself even if he was unaware of his trial date at the time of his disappearance. *Ochoa,* 183 Ariz. at 143, 901 P.2d at 1173. Thus, a defendant's knowledge of the trial date is not the *sine qua non* of voluntary absence. *See Muniz–Caudillo,* 185 Ariz. 261,

914 P.2d 1353 (trial judge did not abuse its discretion even though defendant did not have actual notice of trial date); *see also Ochoa,* 183 Ariz. 139, 901 P.2d 1169 (no abuse of discretion even though defendant did not have personal notice of his trial date). "Even if [Defendant] never actually received notice of the continued trial date, '... it was [his] duty under the conditions of his release to maintain contact with the court and/or his attorney as to the trial date and any changes in that date.'" *Tudgay,* 128 Ariz. at 3, 623 P.2d at 362 (quoting *Rice,* 116 Ariz. at 186, 568 P.2d at 1084).

¶ 18 We must determine whether the record as a whole supports the superior court's determination. Two facts support the finding of voluntary absence and waiver of the right to be present. The first is the Defendant's failure to communicate with his attorney. *Sanchez,* 116 Ariz. at 120, 568 P.2d at 427; *Muniz–Caudillo,* 185 Ariz. at 262, 914 P.2d at 1354; *Cook II,* 118 Ariz. at 155, 575 P.2d at 354; *see also Love,* 147 Ariz. at 570, 711 P.2d at 1243 (failure to remain in contact with attorney waives right to be informed of state's allegation of probation status, just as it can waive right to be present at trial).

¶ 19 Our cases recognize that defendants have a duty to remain in contact with court or counsel to obtain current information about trial settings. "Where a defen-

---

4.  While the conduct that supports an inference of voluntary absence can be "egregious" as the dissent observes, *infra* ¶ 46, it need not be. The question is whether the absence was voluntary. Conduct that can be characterized as "egregious" does support an inference of voluntary absence, but no Arizona authority states that *only* such conduct evidences voluntary absence. *See State v. Garcia–Contreras,* 191 Ariz. 144, 147, ¶ 13, 953 P.2d 536, 539 (1998) ("We should be wary of accused who attempt to 'frustrate the process of justice' ... by purposefully arriving at the courthouse without civilian clothing.") (citation omitted); *State v. Love,* 147 Ariz. 567, 570, 711 P.2d 1240, 1243 (App.1985) ("The constitutionally protected right to be present ... may be waived if the defendant voluntarily absents himself.... It is the responsibility of an out-of-custody defendant to remain in contact ... with the court.... The appellant failed to do so in this case, and she cannot benefit from her misconduct by manipulating a rule designed for her protection.") (citation omitted); *State v. Cook,* 115 Ariz. 146, 149, 564 P.2d 97, 100 (App.1977)

("*Cook I* "), *supplemented,* 118 Ariz. 154, 575 P.2d 353 (App.1978) ("*Cook II* "), *and overruled in part on other grounds, State v. Fettis,* 136 Ariz. 58, 664 P.2d 208 (1983) ("[W]e cannot be certain that [defendant's] failure to appear at trial or sentencing indicates a willful intent to frustrate the criminal process *or* a desire not to be present at a time when he knew he should.") (citations omitted) (emphasis added). Similarly, the cases do not support the proposition that Defendant must engage in "egregious" misconduct. *See Love,* 147 Ariz. at 570, 711 P.2d at 1243 (defendant's failure to maintain contact waives right to be present); *State v. Tudgay,* 128 Ariz. 1, 3, 623 P.2d 360, 362 (1981) (same; defendant claimed not to have received letter from counsel). Defendant's failure to communicate has been the basis for findings of voluntary absence. *E.g., State v. Muniz–Caudillo,* 185 Ariz. 261, 261–62, 914 P.2d 1353, 1353–54 (App.1996); *State v. Sanchez,* 116 Ariz. 118, 120, 568 P.2d 425, 427 (App.1977); *State v. Rice,* 116 Ariz. 182, 185, 568 P.2d 1080, 1083 (App.1977).

dant apparently has made no effort to ascertain the continued date of the proceeding, however, either he has waived personal notice ... or voluntariness may be inferred from his failure to communicate with the court or his attorney." *Sanchez,* 116 Ariz. at 120, 568 P.2d at 427. "[I]t [is defendant's] obligation to 'remain in contact with his ... attorney and with the court.'" *Holm,* 195 Ariz. at 43, ¶ 4, 985 P.2d at 528 (quoting *Love,* 147 Ariz. at 570, 711 P.2d at 1243); *see also Tudgay,* 128 Ariz. at 3, 623 P.2d at 362 (defendant was required by conditions of release to inform himself of continued trial date). A defendant who understands this obligation and then ignores it does so at the peril of losing his right to be present. The record demonstrates that Defendant Walker understood this duty but did not fulfill it.[5]

¶ 20 The superior court's decision is supported by another critical fact. The defendant not only failed to maintain communication, he intentionally made himself unavailable for communications from the court and counsel. *See Cook II,* 118 Ariz. at 155, 575 P.2d at 354 (defendant "continued to avoid all efforts of counsel to apprise him of the date of the subsequent trial."). He left home to visit the library even though he knew that he needed to remain at home to be informed of the new trial setting. The latter fact can be inferred not only from the circumstances of prior brief trial continuances and the case transfer process, but also from the roommate's statement that Defendant was at home to await word from his attorney.

¶ 21 The record on these matters is sufficient to support the superior court's finding. Ordinarily, defendants absent themselves from the entire trial or the end of trial and the court cannot learn from the defendant his reasons for absence. But in this case, we have much more: Defendant ultimately appeared and explained his absence to the court through counsel. The court thus was able to consider whether the reasons for Defendant's absence constituted an excuse. *See State v. Suniga,* 145 Ariz. 389, 392, 701 P.2d 1197, 1200 (App.1985) (insufficiency of defendant's proffered excuses supported finding of voluntary absence). Defendant's availability to explain his absence provided sufficient evidence for the superior court to make its finding of voluntary absence, and renders it unnecessary for us to remand for additional evidence. *Compare Cook I,* 115 Ariz. at 150, 564 P.2d at 101 (remanding), *with Tudgay,* 128 Ariz. at 3, 623 P.2d at 362 (evidentiary hearing was not required and remand was unnecessary). Contrary to the dissent's assertion, *infra* ¶ 42, *State v. Sainz* does not hold that a hearing is always required. Rather, we held that a trial court cannot ignore "the uncontroverted fact that defendant was unable to attend the commencement of trial because of his confinement in jail" and cannot "ignore the reality of the situation and adhere to the limited facts known to the trial court at the time of the defendant's absence." 186 Ariz. 470, 473, 924 P.2d 474, 477 (App.1996).

¶ 22 Although the dissent argues that an evidentiary hearing was required, the circumstances of this case did not mandate a full hearing. First, Defendant did not request one. Second, the superior court offered an opportunity for both Defendant and his companion on the day of his absence to testify on the matter. Defendant chose not to present any testimony. In effect, Defendant was offered an evidentiary hearing and refused it. Third, defense counsel presented Defendant's excuses. The result was a more robust record than in the typical case, in which the defendant is absent from the entire trial or its conclusion, leaving the court without his testimony and defense counsel completely unaware of the circumstances.

¶ 23 We recognize that the trial continuances involved here were brief. This made

---

5. The dissent appears to suggest that a defendant's failure to communicate cannot support a finding of voluntary absence. While mere carelessness may not be enough, see *infra* ¶ 39, neither may a defendant bury his head in the sand and ignore the status of the proceeding. *See Sanchez,* 116 Ariz. at 120, 568 P.2d at 427 (voluntariness can be inferred from failure to communicate with counsel about continued trial date). We think it unwise policy to shift solely to court or counsel the obligation of tracking defendants' whereabouts and contacting them about changes in the court's calendar. Conversely, we think it fair and reasonable that defendants be required to contact court or counsel to be informed of scheduled proceedings.

Defendant's corresponding duty to remain informed somewhat more burdensome. Simply stated, brief continuances require a defendant to maintain more frequent contact. But the nature of Defendant's responsibility does not change merely because the court has adopted procedures to vindicate defendants' rights to speedy trials. Nor is the obligation so onerous as to preclude a finding of voluntary absence when he ignores his responsibility. Walker, knowing that his case was continued previously for a very short period, knowing that his case was in case transfer, and knowing that he was supposed to maintain contact to keep himself informed, failed to contact his attorney or the court to ascertain the status of his trial. No more than a telephone call would have discharged Defendant's duty, and the court was entitled to reject Defendant's claim that he (and presumably, his companion) lacked a few cents for a pay telephone call. Moreover, on the facts of this case, Defendant's burden was even less than making a telephone call: His attorney sent an investigator to Walker's home to notify him in person, but Walker was simply not present. He had decided to leave his home where he might be contacted, without informing his roommate of his whereabouts contrary to the apparently pre-arranged method of contact, for a purpose that the court was entitled to regard as not a valid excuse.

¶ 24 These circumstances permit the finding of voluntary absence. Defendants cannot treat felony criminal trials casually and cannot prevent the trial from going forward by cloaking themselves in ignorance. *See Love*, 147 Ariz. at 570, 711 P.2d at 1243 ("The appellant failed [to maintain contact with court or counsel] in this case, and she cannot benefit from her misconduct by manipulating a rule designed for her protection"; and rejecting defendant's claim based on lack of notice of allegation that offense had been committed while on probation); *see also Diaz v. United States*, 223 U.S. 442, 457–58, 32 S.Ct. 250, 56 L.Ed. 500 (1912) (voluntary

absence from trial cannot prevent trial from proceeding or act as shield from prosecution).

¶ 25 We are not persuaded otherwise by the cases cited by our dissenting colleague. In *People v. Evans*, 21 Ill.2d 403, 172 N.E.2d 799 (1961), defense counsel affirmatively misled the defendant by assuring him that his case would *not* be tried in the near future. In reliance on that statement, the defendant left the state for work. Counsel never informed the defendant of the new trial setting, instead relying on a bondsman to do so. *Id.* at 800. *See People v. Clark*, 96 Ill.App.3d 491, 51 Ill.Dec. 955, 421 N.E.2d 590, 594–95 (1981) (distinguishing *Evans* on this basis).

¶ 26 The dissent also relies on *State v. Mahone*, 297 N.J.Super. 524, 688 A.2d 658 (Ct.App.Div.1997), *aff'd*, 152 N.J. 44, 702 A.2d 1286 (1997). However, that opinion conflicts with Arizona law by requiring the court to provide notice to a defendant, by holding that notification by defense counsel is deficient, and by implicitly rejecting the notion that it is defendant's responsibility to keep himself informed of the trial schedule. *See* 688 A.2d at 660–61.

¶ 27 The dissent cites *State v. Sellars*, 331 N.J.Super. 110, 751 A.2d 151 (Ct.App.Div. 2000), but that case is readily distinguishable. Important to that decision was the defendant's inability to attend trial on short notice. The defendant resided in North Carolina, an eight-hour drive from the court in New Jersey. He needed his employer's permission to be absent from work and the written approval of his probation officer to travel. He lacked funds for transportation and lodging. It was in this light that the court held that less than twenty-four hours of notice of the trial date was insufficient. *Id.* at 156–58.[6] Moreover, the New Jersey rule on waiver materially differs from Arizona law by requiring either a waiver on the record or voluntary absence with actual notice in court of the precise trial date. *Id.* at 157.

---

6. The dissent argues a different view of *Sellars*. The dissent opines that it was unimportant that defendant was absent from the state and therefore unable to appear. *Infra* ¶ 51. That is neither the expressed view of the *Sellars* court nor ours. Based on that court's extensive discussion of the defendant's *inability* to attend trial on short notice, we stand by our reading of *Sellars* that this was an important factor in the decision.

¶ 28 Equally unconvincing is *State v. Smith*, 346 N.J.Super. 233, 787 A.2d 276 (Ct.App.Div.2002). The *Smith* court relied on factors not present here. First, it relied on a court rule requiring that defendants be notified in court of the trial date. Second, it relied on the absence of *any* inquiry by the trial court as to why the defendant was absent. Third, the defendant could neither attend trial on the scheduled date nor contact the court because a snowstorm had closed the courthouse.

¶ 29 The superior court had sufficient evidence from which it could reasonably find that Walker failed to maintain contact with his attorney or otherwise keep himself informed of the trial setting and that he inexcusably made himself unavailable to contact initiated by his attorney to keep him informed. Based on that finding, the court acted within its discretion by deciding that Walker waived his right to be present.

¶ 30 Accordingly, we affirm Walker's convictions.

CONCURRING: DANIEL A. BARKER, Judge.

KESSLER, Judge, dissenting.

¶ 31 I respectfully dissent. The majority holds that without an evidentiary hearing, a court can infer that a defendant intentionally and voluntarily waived his right to be present at trial even if there is no evidence the defendant had warning his trial could begin less than 24 hours after his attorney told him no new trial date had been set.

¶ 32 I dissent for several reasons. First, I conclude the trial court erred in two regards. The trial court erred in failing to hold an evidentiary hearing to determine what Walker had been informed about case transfer and what efforts Walker and his attorney made to ensure Walker had notice of the new trial date. The trial court also erred in concluding Walker had intentionally and voluntarily waived his right to be present at trial without evidence that Walker had intentionally failed to communicate with his attorney to keep himself ignorant of a new trial date. I would remand for an evidentiary hearing on the waiver issue. Second, I dissent because without clear guidelines to trial courts and attorneys about what they should do when cases go into case-transfer to ensure defendants know about when their cases could go to trial, we allow the perpetuation of a trap for the unwary.

*The Facts and Record*

¶ 33 Our supreme court has instructed us that we should indulge in every reasonable presumption against a loss of the defendant's constitutional right to be present at a criminal jury trial. *State v. Dann*, 205 Ariz. 557, 575, ¶ 72, 74 P.3d 231, 249 (2003). Therefore, it is important to closely examine what the record shows related to the waiver issue.

¶ 34 Walker attended pretrial proceedings. He also apparently showed up for the September 3 trial date because his attorney told him at that time that the trial had been postponed. The record is undisputed that at approximately 2:00 p.m. on September 3, Walker talked either to his attorney or someone associated with his counsel and was told there was no reassignment information available. Unbeknownst to Walker, at approximately 2:00 p.m. on September 3 his attorney was in conference with the judge to whom the case had been reassigned and his attorney was learning that the case would begin the next day, September 4.

¶ 35 Because the trial court did not hold an evidentiary hearing,[7] there is no record about most of what occurred between Walker and his counsel starting at 2:00 p.m. on September 3 and the start of trial on September 4. Specifically:

• Contrary to the majority opinion and crucial to its reasoning, there is no evidence Walker's attorney ever told him about the fluid nature of case transfer and that the trial could be set shortly or even the next day, September 4. Presumably, the majority is inferring that Walker's attorney informed him of the nature of case transfer and that

---

7. On September 5, the trial court allowed defense counsel to explain where Walker had been on September 4. Walker was not asked if he wanted to address this issue and the trial court never inquired what Walker knew about case-transfer.

the trial could be set to begin imminently. Moreover, the arrangement between Walker and his counsel that his counsel could reach Walker through Walker's roommate was developed prior to and not as a result of the case-transfer;

• There is no evidence Walker's counsel attempted to reach Walker on the afternoon or evening of September 3 to tell him about the reassignment. All we know is defense counsel's unsworn representation to the trial court that someone from her office tried to reach Walker beginning at 7:30 a.m. on September 4 to tell him the trial had been set to begin that very day.

• There is no evidence Walker was told how to reach his attorney after office hours or whether Walker attempted to do so.

• There is no evidence Walker was told not to leave his home without telling his attorney or to be "on-call" by having a cell phone with him at all times.

• There is no evidence whether Walker attempted to call his attorney either later on September 3 or early on September 4 before Walker left to go to the library. For all either the trial court knew or this Court knows, Walker attempted to call his attorney early on September 4 before leaving for the library and either could not get an answer or left a message where he would be.

¶ 36 The majority states that Walker had previously been warned that he had to stay in touch with his attorney and that if he was absent, the trial could continue in his absence. While this latter fact is accurate, Walker's defense counsel waffled on the issue of what Walker was told about keeping in touch with her. When Walker did not appear for trial on the morning of September 4 because no one had told him the trial had been reset since his September 3, 2:00 p.m. conversation with his attorney's office, defense counsel told the court she had informed Walker he had an obligation to keep in touch with her. However, on the second day of trial (September 5) defense counsel told the trial judge in Walker's presence she could not recall what Walker had been told on September 3. She now stated only that it was common practice to tell defendants to keep in touch with their attorneys and that at some point earlier in the proceedings he had been told to do so. Thus, there is *no* evidence of what Walker was told on September 3 except that the case had been continued.

¶ 37 Without holding an evidentiary hearing, the trial court determined that Walker had voluntarily waived his presence both for jury selection and the entire presentation of the State's case, held on the afternoon of September 4.[8]

### Controlling Legal Principles

¶ 38 This waiver or forfeiture[9] issue is controlled by several principles. First, the defendant has a constitutional right to be present during jury selection and at trial. *State v. Garcia–Contreras*, 191 Ariz. 144, 146, ¶ 8, 953 P.2d 536, 538 (1998); *State v. Levato*, 186 Ariz. 441, 443, 924 P.2d 445, 447 (1996).[10] *See also* Ariz. R.Crim. P. ("Rule") 19.2 (giving the defendant the right to be present at every stage of trial, including the impaneling of the jury). Given the importance of that right, a court should make every effort to honor a defendant's request to attend all proceedings and should indulge every reasonable presumption against a loss of constitutional rights. *Dann*, 205 Ariz. at 575, ¶ 72, 74 P.3d at 249; *Garcia–Contreras*, 191 Ariz. at 148, ¶ 14, 953 P.2d at 540. Depriving a defendant of his right to participate in jury selection where his absence is involuntary is structural error. *Garcia–Contreras*, 191 Ariz. at 148–49, ¶¶ 17–22, 953 P.2d at 540–41.

8. Since the trial court never held an evidentiary hearing on the motion for mistrial, it could not determine Walker's credibility about what he was doing on September 4 and about his attorney's representation that Walker had no pocket change to call her from the library on September 4.

9. Some courts refer to the issue as one of waiver, others as one of forfeiture of the right to be present. *Pinkney v. State,* 350 Md. 201, 711 A.2d 205, 212 (1998) (collecting authorities).

10. At common law the right to be present at trial, including the right to be present at the return of a verdict, was deemed essential to a valid trial and conviction of a felony. *Crosby v. United States,* 506 U.S. 255, 259, 113 S.Ct. 748, 122 L.Ed.2d 25 (1993).

¶ 39 Second, to waive the constitutional right to be present, the waiver must be voluntarily made, knowing when the trial is scheduled and that the trial can proceed in absentia. Rule 9.1;[11] *Garcia–Contreras,* 191 Ariz. at 147, ¶ 9, 953 P.2d at 539; *State v. Holm,* 195 Ariz. 42, 43, ¶ 2, 985 P.2d 527, 528 (App.1998), *disapproved on other grounds, State v. Estrada,* 201 Ariz. 247, 34 P.3d 356 (2001); *State v. Sainz,* 186 Ariz. 470, 472–73, 924 P.2d 474, 476–77 (App.1996). To be effective, any such waiver must be intentional. *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) (waiver of right must be an intentional relinquishment or abandonment of a known right). It is only when the record clearly shows the defendant has waived his right to be present that the court should proceed in absentia. *State v. McCrimmon,* 187 Ariz. 169, 171, 927 P.2d 1298, 1300 (1996). Mere negligence by a defendant is normally not deemed to be a voluntary waiver of the right to be present. 24A Am.Jur.2d *Criminal Law* § 1135 (absence from trial is not voluntary if it is a result of mere negligence and not purposeful, deliberate or under circumstances from which an intent to be absent can be presumed); *State v. Smith,* 346 N.J.Super. 233, 787 A.2d 276, 279 (Ct.App.Div.2002)(waiver not governed by reasonable person standard).

¶ 40 Third, the defendant does not have the burden to show his absence was involuntary unless he has personal notice of the time of the hearing, notice of the right to be present and is warned that the proceeding will go forward in his absence. *State v. Reed,* 196 Ariz. 37, 38–39, ¶ 3, 992 P.2d 1132, 1133–34 (App.1999); *State v. Suniga,* 145 Ariz. 389, 392, 701 P.2d 1197, 1200 (App. 1985).

¶ 41 Fourth, if the defendant's failure to communicate with his attorney is sufficiently egregious, lack of knowledge of the trial date based on communication failure can be deemed to be a voluntary waiver of the right to appear. *E.g., Holm,* 195 Ariz. at 43, ¶ 4, 985 P.2d at 528. However, where the defendant does not have notice of the date of the hearing or there is no evidence he was told a continuance could be short, an inference of waiver based on the defendant's failure to communicate with the attorney is premised on the rationale that a defendant should not be permitted to frustrate the process of justice through purposeful misconduct. *Garcia–Contreras,* 191 Ariz. at 147, ¶ 13, 953 P.2d at 539; *State v. Love,* 147 Ariz. 567, 570, 711 P.2d 1240, 1243 (App.1985); *State v. Cook,* 115 Ariz. 146, 149, 564 P.2d 97, 100 (App.1977), *overruled on other grounds, State v. Fettis,* 136 Ariz. 58, 664 P.2d 208 (1983). As noted above, at the very least the voluntary nature of any alleged waiver is not judged by a negligence standard.

¶ 42 Fifth, when the defendant does appear and contends he did not waive his presence, a court should conduct an evidentiary hearing on the issue of waiver. If such a hearing shows that the defendant did not voluntarily waive his or her right to appear at trial, the trial court should reconsider its earlier decision to proceed in absentia. *Sainz,* 186 Ariz. at 473, 924 P.2d at 477;[12]

---

11. Rule 9.1 appears to permit a finding of voluntary waiver if the defendant, with the requisite or inferred knowledge, fails to appear at the commencement of trial. *State v. Tacon,* 107 Ariz. 353, 355–57, 488 P.2d 973, 975–77 (1971) (interpreting prior rule). *Contra Crosby,* 506 U.S. at 259–62, 113 S.Ct. 748 (Fed.R.Crim.P. 43 permits a finding of knowing and voluntary waiver only where the defendant who appears at the commencement of trial fails to appear during the trial); *Meadows v. State,* 644 So.2d 1342, 1345–46 (Ala.App.1994) (same applying state rule).

12. The majority contends that *Sainz* does not require an evidentiary hearing. The *Sainz* court held that "when using Rule 9.1, the trial court must, if asked, determine whether the defendant's absence was, in fact, voluntary. If subse-

quently discovered facts show that a defendant's absence was not voluntary, then it is error to ignore the reality of the situation and adhere to the limited facts known to the trial court at the time of the defendant's absence ... We believe the correct course to follow in such situations is for the trial court to first determine on the record whether the defendant's absence was voluntary or involuntary based on all the facts presented to the court on the issue." Absent an admission by the defendant that his absence was voluntary, the only way to determine facts is to hold an evidentiary hearing.

Walker moved for a mistrial on September 5. To determine whether Walker had waived the right to be present, the trial court should have held an evidentiary hearing rather than simply rely on what Walker's counsel stated. *State v.*

*Pinkney,* 711 A.2d at 213. In holding such a hearing, the trial court should not rely solely on hearsay, but should take evidence from the defendant to determine what he knew and why he did not appear. *Bishop,* 139 Ariz. at 569–70, 679 P.2d at 1056–57 (court abused its discretion in finding absence from hearing was voluntary where it relied on hearsay from detention officer about what happened rather than hearing from defendant; record lacked evidence that anyone told defendant when next hearing was to be held). *Accord People v. Amato,* 172 A.D.2d 545, 567 N.Y.S.2d 873, 875 (A.D.1991) (reversible error for trial court to only conduct cursory inquiry into whether absence was deliberate and to recite on record reasons for its findings). Moreover, the trial court should make sufficient findings of fact on the waiver issue. *State v. Perez,* 115 Ariz. 30, 31, 563 P.2d 285, 286 (1977); *State v. Cassidy,* 567 N.W.2d 707, 710 (Minn.1997). When the hearing or record is insufficient, the appellate court can remand for a fuller evidentiary hearing. *Perez,* 115 Ariz. at 31, 563 P.2d at 286; *Garcia–Contreras,* 191 Ariz. at 145, ¶ 2, 953 P.2d at 537; *Cook,* 115 Ariz. at 149–50, 564 P.2d at 100–01. *Accord Amato,* 567 N.Y.S.2d at 875.

### Discussion

¶ 43 The issue presented is whether the record of the September 5 hearing[13] is sufficient to show that Walker voluntarily waived his right to appear on September 4 by allegedly failing to communicate with his attorney between 2:00 p.m. on September 3 and 4:00 p.m. on September 4. The majority states that this is not a case where waiver can be inferred merely from absence because Walk-

er did not have knowledge of the new trial date. *Supra,* ¶ 16. Rather, the majority concludes the trial court could infer a voluntary absence because it believes the record shows for a period of 26 hours Walker both failed to communicate with his attorney and had not given his attorney notice of where he could be reached.

¶ 44 The problem with this conclusion, and where I differ from my colleagues, is twofold. First, the court erred in not holding an evidentiary hearing. As noted above, unless the defendant has knowledge of the date of the hearing, the burden is on the State to show the defendant intentionally and voluntarily waived his presence at trial. Reaching such a conclusion on a disputed issue without holding an evidentiary hearing, but simply listening to argument of counsel, was erroneous.

¶ 45 Second, despite the absence of an evidentiary hearing, I might agree with the majority if there was evidence that Walker knew about the nature of case-transfer and that the trial could be set to begin on a moment's notice. *There is simply no such evidence in the record.* The majority infers such knowledge from the fact that the case was continued on September 3 and Walker's attorney at some point told him to stay in touch with her. However, courts must make every reasonable inference that the defendant has not waived this important constitutional right. *Dann,* 205 Ariz. at 575, ¶ 72, 74 P.3d at 249; *Garcia–Contreras,* 191 Ariz. at 148, ¶ 14, 953 P.2d at 540. A voluntary waiver should not be inferred based on lack of communication because there were no facts showing both that Walker failed to try to

---

*Bishop,* 139 Ariz. 567, 569–70, 679 P.2d 1054, 1056–57 (1984). Nor should we assume that a defendant, untrained in the law, will initiate his own presentation at such an informal conference, to contradict or supplement what his attorney is telling the trial court.

The majority also states that Walker could have testified at trial why he was absent. However, it was up to the court, not the jury to determine whether the motion for mistrial should have been ordered. The trial judge's suggestion that Walker could testify before the jury on why he was absent was not to assist the trial court in ruling on the motion for mistrial, but to minimize any prejudice caused by proceeding in absentia. If proceeding in absentia was erroneous, under

these facts it would have been structural error and prejudice was therefore not an issue. *Garcia–Contreras,* 191 Ariz. at 148–49, ¶¶ 17–22, 953 P.2d at 540–41.

13. The majority does not address whether the trial court should have continued the trial on September 4 and issued a warrant for Walker's arrest. Given the fact the State was prepared to proceed on September 4 and the trial court had no way of knowing on September 4 if and when Walker would ever appear, denying the motion to continue the trial on September 4 was not erroneous.

reach his attorney and that his conduct was sufficiently egregious to infer he was seeking to frustrate the process of justice through purposeful misconduct by manipulating a rule intended to protect his constitutional rights. *Garcia–Contreras,* 191 Ariz. at 147, ¶ 13, 953 P.2d at 539; *Love,* 147 Ariz. at 570, 711 P.2d at 1243; *Cook,* 115 Ariz. at 149, 564 P.2d at 100. At the very least, a voluntary waiver cannot be inferred on a mere negligence standard. 24A Am.Jur.2d *Criminal Law* § 1135; *Smith,* 787 A.2d at 279. There is no evidence that Walker is guilty of such manipulation or even negligence.

¶ 46 The majority points to no case where a waiver was found simply because the defendant did not know the case might be continued for only 24 hours. While the majority cites numerous cases, *supra,* fn. 4, stating a failure to stay in contact with defense counsel or a failure to know the trial date was sufficient to find a waiver, each of those cases involved egregious conduct reflecting a deliberate indifference to a desire to appear or an intentional waiver. Our appellate courts have found voluntary absence from trial despite lack of actual notice of a trial date only in the face of egregious conduct making it clear the defendant purposefully avoided maintaining contact with his counsel over extended periods. *Holm,* 195 Ariz. at 43, ¶ 4, 985 P.2d at 528 (defendant released from custody in February and absconded without contacting his attorney for several months); *State v. Tudgay,* 128 Ariz. 1, 2–3, 623 P.2d 360, 361–62 (1981) (defendant had constructive notice of new trial date where counsel mailed new trial information nearly a month in advance of trial to the address where prior letters were successfully sent to defendant); *Love,* 147 Ariz. at 570, 711 P.2d at 1243 (defendant fled jurisdiction); *Tacon,* 107 Ariz. at 355–57, 488 P.2d at 975–77 (defendant had actual notice of start of new trial but decided not to communicate with attorney about his ability to appear); *State v. Muniz–Caudillo,* 185 Ariz. 261, 261–62, 914 P.2d 1353, 1353–54 (App.1996) (defendant did not appear at pretrial conference on February 20, 1992, and did not have any contact with his attorney; defendant tried in absentia in August 1992 and found when he was arrested on bench warrant in June 1994);

*State ex rel. Romley v. Superior Court,* 183 Ariz. 139, 144–45, 901 P.2d 1169, 1174–75 (App.1995) (defendant escaped from jail and did not learn of new trial date because he failed to communicate with his lawyer for six months following his escape); *State v. Sanchez,* 116 Ariz. 118, 120, 568 P.2d 425, 427 (App.1977) (defendant out of contact with attorney for approximately two months when condition of release required him to communicate with his attorney at least once a week; court proceeded in absentia after an additional one month continuance, presumably requested by the defendant's attorney because there had been no contact); *Cook,* 115 Ariz. at 148, 564 P.2d at 99, *supplemented,* 118 Ariz. at 155, 575 P.2d at 354 (defendant, knowing of original trial date, failed to maintain contact with his counsel from at least December 1975 to April 1976, when a bench warrant was issued for his arrest); *State v. Rice,* 116 Ariz. 182, 185, 568 P.2d 1080, 1083 (App.1977) (defendant left jurisdiction immediately after conversation with counsel about the date the trial was supposed to start and did not keep in contact with attorney for over one month); *Brewer v. Raines,* 670 F.2d 117, 118–19 (9th Cir.1982) (failure to communicate with attorney over four months amounted to defendant deliberately keeping himself ignorant of hearing). *Compare State v. Benson,* 176 Ariz. 281, 284, 860 P.2d 1334, 1336 (App. 1993) (notice of hearing given to original defense counsel three years after initial sentence of probation insufficient to render failure to appear voluntary).

¶ 47 The majority characterizes Walker's conduct as equivalent to keeping his head in the sand to avoid knowing the status of the proceedings. *Supra,* fn. 5. Having talked to his counsel on September 3 at 2 p.m. and being told that there was no new trial date, without any other evidence that Walker knew the date could be reset at any time, is hardly sticking one's head in the sand. Nor, as the majority holds, should the lack of such knowledge put a greater burden on the defendant to keep in contact with his attorney. Without an evidentiary hearing, we do we not know whether Walker tried to reach his attorney before leaving for the library. Equally important, without evidence of knowledge

of the nature and length of any case-transfer, such a sui generis increased burden gives neither defendants nor courts a clear principle on which to assess waiver. Given the presumption against waiver, it provides counsel and courts greater guidance to require an evidentiary hearing to determine what the defendant knew about case transfer or any continuance and what efforts he took to keep informed of the status of his case in light of that knowledge.

¶ 48 Contrary to the majority's conclusion, *supra*, fn. 5, I am not suggesting that we shift the obligation of tracking a defendant's whereabouts and contacting them about changes in the court calendar. I am simply stating that before we infer an intent to waive the right to be present at trial, there must be some evidence that the defendant knew that any continuance could be short and he had to be available because the trial could be set to begin as soon as the next day.

¶ 49 The majority points to no case from any jurisdiction holding the right to be present was voluntarily waived when the defendant's absence was based on a case being placed into a case-transfer type of holding pattern and the defendant was not informed of the impact of such a procedure on his trial date. However, courts in other jurisdictions have held that a defendant's absence was not voluntary on facts similar to those presented here.

¶ 50 For example, a waiver should not be inferred where, as here, there is evidence the defendant was never informed of the meaning of case-transfer. In *State v. Sellars*, 331 N.J.Super. 110, 751 A.2d 151 (Ct.App.Div. 2000), the case was listed to begin on March 11 and placed on the judge's March 12 calendar. The defendant did not appear on March 12. The trial judge called the defendant, who was living out of state. Defense counsel claimed she had not been able to reach him by telephone, but had sent him a letter with the trial date. The defendant claimed he had never received a letter and the telephone number had been changed years earlier. The defendant was informed to appear on March 13 or the trial would proceed in his absence. The attorneys then went to the assignment judge for a continu-

ance. That motion was denied because the defendant was supposed to be on-call and there was enough time for the defendant to travel to New Jersey. Defense counsel explained to the assignment judge that her client was kept on-call, but she may have failed to inform him of the trial date of March 11 or 12 and he did not have the resources to travel to the state on a moment's notice. Defendant did appear on March 18, after he had been convicted in absentia. In post-conviction relief proceedings, the appellate court granted relief because the evidence showed defense counsel had not told her client to come in for trial, but only to stand by, and she assumed the defendant could come to the state on one or two days' notice. The appellate court held that without a record the defendant understood what "stand-by" was, a court could not infer a voluntary waiver:

> The inference of a waiver is permissive, not mandatory. We are persuaded that the facts in the present case did not justify the inference. Defendant had appeared when required on all previous occasions ... The record established that defendant knew that his case was listed for the March 11, 1996 calendar call and that he was on "stand by" status. Defendant was aware that cases listed for a calendar call frequently are not reached for trial.

> It appears from the record that *the March 11 call was the first time defendant had been on "stand by" status. There is nothing in the record to suggest that defendant knew that "stand by" meant that he had to come to New Jersey for trial on twenty-four hours' notice. We perceive that lack of knowledge to be a major flaw in the State's position....*

> *We conclude that the record precludes an inference of waiver. We base that conclusion on the absence of evidence to establish that defendant knew that his presence would be required on twenty-four hours' notice; the reasonableness of the reasons defendant gave for not being able to comply with the notice he received; [and] defendant's history of appearing in court when required to do so ....*

*Id.* 751 A.2d at 157–58 (emphasis supplied). *See also People v. Evans,* 21 Ill.2d 403, 172 N.E.2d 799, 800–01 (1961) (counsel told defendant he did not think case would be called for trial during the week the trial actually occurred; while there might have been negligence by the attorney or the defendant, a court should not be quick to hold such a delinquency to work a forfeiture of the right to be present at trial).[14]

¶ 51 The majority states *Sellars* is distinguishable because there the defendant was out of state and could not return to New Jersey on 24 hours notice. Besides the fact the Sellars court relied on the defendant's lack of knowledge about the effect of a trial's "stand-by" status and Sellars' prior appearances in court to rule there was no waiver, I do not think whether the defendant is out of state changes the principle. The keystone of procedural due process is to give a party sufficient notice and an opportunity to be heard at a meaningful time and in a meaningful manner. The notice "must afford a reasonable time for those interested to make their appearance." *Huck v. Haralambie,* 122 Ariz. 63, 65, 593 P.2d 286, 288 (1979) (quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). *See also State v. Mahone,* 297 N.J.Super. 524, 529, 688 A.2d 658, 661 (N.J.Super.Ct.App.Div.), *aff'd,* 152 N.J. 44, 702 A.2d 1286 (1997) (adequate notice to the defendant is an essential element of a knowing waiver of the right to attend trial). It should not matter whether a party is an 8–hour drive from the court and has no means to return on 24–hours notice or lives in the same city. If a defendant does not have

reasonable notice of the hearing and there is no evidence he was told to stay on call or that the trial could be reset to begin in less than 24 hours, he should not be held to have intentionally and voluntarily waived his presence at the hearing.

¶ 52 This case bears a striking similarity to the facts in *Sellars* absent any record showing what Walker was told about case transfer. In each case the defendant for the first time was on an informal trial court schedule which could result in the trial being postponed. In neither case was there any evidence that the defendant was informed of the nature of that schedule and when he could have to show up in court. In neither case was there any evidence that the defendant intentionally sought to avoid obtaining information about the new trial date. In *Sellars,* the defense counsel failed to inform the defendant of the new trial date until a day or two before trial. Here, there is no evidence the attorney made any effort to contact Walker after 2:00 p.m. on September 3 and 7:30 a.m. on September 4 even though the attorney apparently knew his client had communicated with her office and had been told at 2:00 p.m. that there was no new trial date.

¶ 53 Similarly, waiver should not be inferred where the defendant is given insufficient notice when a rescheduled trial is to begin and the record does not show a procedure was in place to keep the client informed of the trial status. In *Mahone,* 688 A.2d at 659–61, the defendant had notice that his trial was to begin on June 12. During the week prior to June 5, the trial judge resched-

---

14. The majority contends that *Evans* is distinguishable because defense counsel might have misled his client to believe the case would not be tried during the week it was set. While that is true, an attorney's active misleading the defendant as to the date the case might be tried or his failure to tell the defendant that the case was reset for the next day is mere negligence which should not be used to infer a waiver of this important constitutional right.

The majority also states that the Illinois Supreme Court's decision in *Evans* was distinguished on the basis of attorney negligence by one of Illinois' lower appellate courts in *People v. Clark,* 96 Ill.App.3d 491, 51 Ill.Dec. 955, 421 N.E.2d 590 (1981). There, the appellate court held that notice of the trial date to the attorney

is deemed imputed to the defendant. Unlike the facts here, there was no evidence the defendant in *Clark* was told by her attorney that there was no new trial date. Nor is there any evidence that the case was merely continued for 24 hours.

Moreover, the Illinois courts are divided in whether mere notice to defense counsel amounts to constructive notice to the defendant. *See People v. Watson,* 109 Ill.App.3d 880, 883–84, 441 N.E.2d 152, 153–54 (1982). In any event, the holding in *Clark* that notice can be imputed contradicts Arizona law which requires evidence that the defendant intentionally failed to communicate with his attorney to infer that he was avoiding learning of the trial date.

uled the trial to June 5. Defense counsel attempted to locate his client but could not find him. There was evidence the attorney's secretary reached the defendant by telephone on June 2, but the defendant did not appear on June 5. The trial court gave defense counsel until June 6 to locate the defendant. Defense counsel then learned that his client might not be living at the number which his secretary had called on June 2. When the defendant could not be found on June 6, the trial proceeded in absentia. The appellate court reversed, holding that the record must show the court informed the defendant of the effect of stand-by or that the record is clear the defendant understood such effect:

> We do not conclude that a defendant can never be deemed to have waived his right to be present at trial if he doesn't respond to his attorney's call. But *if the trial date is to be flexible, and defendant is to "stand by" and respond to such a call so that he need not repeatedly come to court and receive notice there, that must be developed on the record with the defendant present. A defendant cannot be tried in absentia because he does not respond on short notice to a call from his attorney's office to report prior to the date he was told to do so by the judge, unless such notice was itself developed on the record "in court."* . . .

Here, there was neither a personal direction by the court to the defendant to be present on the actual trial date *nor acknowledgment by defendant on the record of a procedure whereby he would remain on call* . . . . This is not a case where defendant could have been advised of an adjourned or rescheduled date when he arrived for trial on the noticed date, and the record does not indicate he was advised by the judge at a pretrial proceeding that he could be called back to court sooner than the date he had been given. "Adequate notice to the defendant is an essen-

tial element of a knowing wavier of the right to attend trial."

*Mahone*, 688 A.2d at 660–61 (emphasis supplied) (citations omitted).[15]

¶ 54 Waiver also should not be inferred based on a continuance where the defendant is not informed that the trial will be reset for the next day. In *Smith*, 787 A.2d at 278–79, the defendant was told to appear for trial on January 25 but was not told what would occur in the event of an adjournment or continuance. The courts were closed on January 25 because of a snowstorm and the trial was held on January 26 without the defendant being present. The trial judge concluded defendant should have assumed that the case would begin on January 26 or should have inquired about how to proceed. Defense counsel did not attempt to reach the defendant because she thought the trial would not start on January 26 and it typically took her 24 hours to reach the defendant. During impanelment of the jury, defense counsel informed the court she had reached the defendant and he would be in after lunch. The court continued with impaneling the jury and the defendant arrived during opening statements. The court made no inquiry concerning what the defendant knew or assumed about a postponement or why he was not present that morning. The appellate court reversed, holding in part that there

> can be no credible argument for a finding of waiver. In addition to having no actual notice of the trial date, no inquiry was made as to why defendant was not timely present . . . Contrary to the trial court's statements, defendant's constitutional right to be present during trial is not governed by a reasonable-person standard.

*Id.* at 787 A.2d at 279.

¶ 55 The majority points out that in *Smith*, the appellate court based its holding on the fact that there was no inquiry as to why *Smith* was absent and the court was enforc-

---

15. The majority contends that *Mahone* conflicts with Arizona law by requiring the court to provide notice to the defendant, which is contrary to Arizona law. As noted by the above quoted language from *Mahone*, the notice need not be given to the defendant personally by the court. Rather, all that is required, and which was lack-

ing in *Mahone* and here, was some evidence on the record that the defendant understood that he could, on a moment's notice, have to return to court for trial. *Mahone* does not reject the idea that a defendant has a responsibility to take steps to keep himself informed of the trial date.

ing a rule requiring notice of the defendant in court as to the trial date. While an inquiry was made in this case, no evidentiary hearing was held. As noted above, absent a concession by the defendant that he was absent voluntarily, the only way to determine if the absence was voluntary is an evidentiary hearing, not a simple inquiry of counsel. Additionally, the state rule in *Smith* is not that the defendant must be informed of the trial date in court, but allows for an alternative that there is something of record showing the defendant understood that he could have to return to court for trial on short notice. *See Mahone*, 688 A.2d at 660–61. Thus, in *Smith*, as in this case, there is nothing of record showing the defendant knew his case could be reset for trial on less than 24 hours notice.

¶ 56 The limited record in this case does not show the kind of conduct found in other cases to permit an inference that a defendant intended to waive his right to be present. There is no evidence Walker purposefully avoided communicating with his attorney to manipulate the rules protecting his right to appear at trial. Nor is there any evidence that he acted negligently. This is because there is no evidence at all about what Walker was told or knew about case-transfer and what he and his attorney did after 2:00 p.m. on September 3 and before 4:00 p.m. on September 4, except that his attorney made a belated attempt to contact Walker on the morning of September 4 and Walker was in the library for most of September 4. There was no evidence Walker was told that the case reassignment and trial could occur in less than 24 hours or how to reach his attorney after office hours. *Sellars*, 751 A.2d at 157–58. Nor was there any evidence his attorney tried to reach him after 2:00 p.m. on September 3 to tell him about the new trial date despite the attorney's duty to do so. *Bishop*, 139 Ariz. at 570, 679 P.2d at 1057 (attorney has duty to inform client of hearing dates). Nor is there a record of what efforts Walker made, if any, to reach his attorney before leaving for the library on September 4. The record also does not show what his

counsel or her office told Walker when he called at 2:00 p.m. on September 3 about a possible date for trial except that they did not have a new trial date. Based on this record, the trial court could not reasonably infer that Walker intentionally and voluntarily waived his presence at trial because he failed to keep in contact with his attorney.

¶ 57 When the record is insufficient to determine whether waiver of the right to be present was voluntary, it is appropriate to remand the matter for an evidentiary hearing. *Perez*, 115 Ariz. at 31, 563 P.2d at 286; *Garcia–Contreras*, 191 Ariz. at 145, ¶ 2, 953 P.2d at 537; *Cook*, 115 Ariz. at 149–50, 564 P.2d at 100–01. This should be especially true when the defendant has sought to attend the hearings. A court should indulge in every reasonable presumption to avoid a waiver of the right to attend trial. *Dann*, 205 Ariz. at 575, ¶ 72, 74 P.3d at 249; *Garcia–Contreras*, 191 Ariz. at 148, ¶ 14, 953 P.2d at 540.

¶ 58 An evidentiary hearing may have shown that Walker was aware of the nature of case transfer and simply chose not to contact his attorney. Or not. But until an evidentiary hearing is held, there is an "unrectified case of injustice [which] has a terrible way of lingering, restlessly, in the social atmosphere like an unfinished question." [16] I would remand this case to the trial court for a full evidentiary hearing to determine: (1) Whether defense counsel informed Walker or Walker otherwise knew how case transfer worked and that the trial could be rescheduled at a moment's notice; (2) What efforts the attorney took to inform Walker of the rescheduled trial after she learned the case had been reset for trial; (3) What defense counsel told Walker about how to stay in touch with her after the counsel's office was closed; and (4) What efforts Walker made to contact his attorney before the rescheduled trial began.[17]

---

**16.** Mary McCarthy, On the Contrary (1961).

**17.** Assuming the evidence shows that Walker's counsel failed either to take appropriate steps to

ensure Walker had the means to keep in touch with her or to keep Walker informed of the nature of case-transfer or the new trial date, Walker cannot contend in this proceeding that he is entitled to relief for ineffective assistance of counsel. *State v. Spreitz*, 202 Ariz. 1, 3, ¶ 9, 39 P.3d 525, 527 (2002). He could seek post-conviction relief if review by the Arizona Supreme Court is denied. However, even if post-conviction relief were granted, it would result in Walker being incarcerated during those proceedings and in an unnecessary expenditure of judicial resources. Remanding for a further evidentiary hearing now would avoid both those adverse consequences.